UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Tyrone Palmer, | |
| Plaintiff, | Civil No. 3:25-CV-00102 (MPS) |
| v. | |
| Metro-North Railroad Company, | |
| Defendant. | July 31, 2025 |

### RULING ON PLAINTIFF'S MOTION TO COMPEL

Plaintiff moves to compel Defendant Metro-North Commuter Railroad Company ("MNR") to produce all documents and ESI responsive to Requests for Production ("RFP") Nos. 4, 13, 17, 18, 29, 38, 39 and 40 and complete responses to Interrogatories Nos. 3, 10. 13. and 14. For the reasons that follow, Plaintiff's Motion to Compel (ECF No. 20) is GRANTED in part, DENIED in part and DENIED as moot in part.

*Legal Standard*

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Information is "relevant" if it "(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003). The burden of demonstrating relevance is on the party seeking discovery. *Ayuso v. Butkiewieus*, No. 3:17CV00776 (AWT), 2019 WL 1110794, at *2 (D. Conn. Mar. 11, 2019). "Because the Federal Rules . . . are to be construed liberally in favor of discovery, . . . the party resisting discovery bears the burden of showing why discovery should be denied." *In re Aggrenox Antitrust Litig.,* No. 3:14-CV-572 (SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017).

### *The Discovery Requests*

***Request for Production No. 13:*** Documents Concerning Subsequent Remedial Measures.

Defendant "confirmed that there were no subsequent remedial measures or actions taken after the alleged incident with respect to how and where to properly replace lateral bumpers on passenger railcars." ECF No. 29 at 2 (citing Aff. Att. Patrick J. Corcoran, Ex. 1). The Court agrees with Plaintiff that this information is discoverable. Accordingly, the Motion to Compel as to RFP No. 13 is granted. Defendant will provide a supplemental response to RFP No. 13, within fourteen days. D. Conn. L. Civ. R. 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall be made within fourteen (14) days of the filing of the Court's order.").

***Requests for Production Nos. 17 and 18***: Instructions, Procedures, Guidelines, Schematics, etc., Concerning How to Replace Lateral Bumpers.

Defendant reports that it made a supplemental production of additional responsive documents on July 21, 2025, *after* the Motion to Compel was filed. ECF No. 29 at 2 (citing Ex. 2). The Court agrees with Plaintiff that this information is discoverable. Defendant is aware of its ongoing obligation to supplement responses to "an interrogatory, request for production or request

for admission" throughout this litigation. Fed. R. Civ. P. 26(e)(1)(A). Accordingly, the Motion to

Compel as to RFP Nos. 17 and 18 is granted.

***Request for Production No. 29:*** seeks "[t]he complete contract between Metro North and MetLife
concerning employee Sickness or Injury benefits.

 In its Second Affirmative Defense MNR claims it "is entitled to a set off and/or credit for

payments made by it or on its behalf to the plaintiff or on the plaintiff's behalf for medical expenses

and any other benefits for which it is entitled to credit or right of reimbursement pursuant to any

applicable collective bargaining agreement." ECF No. 15 at 2. To date, Plaintiff received

approximately $6,964 in MetLife Sickness/Injury Benefits. ECF No. 21 at 7.

 MNR argues there is no reason for Plaintiff to need access to the contract between MNR

and MetLife. First, by operation of law, to the extent that Plaintiff was paid under the MetLife

program, MNR is entitled to a set off for payments it made under the MetLife program for

Plaintiff's benefit." ECF No. 29 at 3 (citing 45 U.S.C. § 55 "any action brought against any such

common carrier under or by virtue of any of the provisions of this act [45 U.S.C.S. §§51 *et seq*.]

such common carrier may set off therein any sum it has contributed or paid to any insurance, relief

benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto

on account of the injury or death for which said action was brought."). Second, MNR states that

the "MetLife short term disability program is paid *solely* by MNR. The employee does not

contribute to the cost of this program." *Id.* (Ex 3 Aff. Claims Representative Kristopher Proto).

 Plaintiff argues that the "contract between MetroNorth and MetLife is relevant to

determining whether Metro North or MetLife have a valid claim to set-off any of the money paid

by MetLife to the Plaintiff from any verdict or settlement in this case." *Id.* The Court agrees. If

MNR intends to seek a set off, then Plaintiff is entitled to review the contract to determine if MNR

has a valid claim to set off of any money paid by MetLife to Plaintiff from any verdict or settlement in this case. Accordingly, the Motion to Compel as to RFP No. 29 is granted.

***Requests for Production Nos. 38, 39, 40:*** Job Descriptions for Plaintiff's Foreman, Assistant Supervisor and Supervisor.

Plaintiff seeks the job descriptions of Plaintiff's Foreman, Assistant Supervisor and Supervisor working in the Maintenance of Equipment Department. Plaintiff argues that "[i]t is abundantly clear. . . that the Job Description Sheets will lead to highly relevant and admissible evidence about what the 'Essential [Job] Functions' for each job are and whether or not they performed their 'Essential [Job] Functions' surrounding the plaintiff's injury." ECF No. 21 at 8-9.

Defendant produced the job descriptions *after* the Motion to Compel was filed. ECF No. 29 at 4 (citing Ex. 4). Accordingly, the Motion to Compel as to RFP Nos. 38, 39, and 40 is granted.

***Request for Production No. 4:*** Documents Concerning the Accident.

Regarding the "supposed" issue with the privilege log, Defendant reports that the "issue was resolved when counsel for MNR informed counsel for Plaintiff on June 24, 2025, that no such records exist." ECF No. 29 at 5. MNR served supplemental responses that included a statement that no documents were being withheld on July 15, 2025, *after* the Motion to Compel was filed. ECF No. 29 at 6 (citing Ex. 7).

Regarding files maintained by the foreman or supervisor and the field safety manager who prepared the IR-2 investigation, Defendant states that it provided emails from Michael Talt and Donn Dobson on July 15, 2025 and July 21, 2025, *after* the Motion to Compel was filed. ECF No. 29 at 6 (citing Exs. 2 and 6). Accordingly, the Motion to Compel is granted as to RFP No. 4.

***Interrogatory No. 3:*** Claim Agent Documents.

MNR reports that it "informed counsel for Plaintiff on June 24, 2025, that no such records exist: 'Please accept this email as supplemental production response for RFP #4: **There are no**

4

**Metro-North Claims Department records related to this incident that existed prior to August 5, 2024.'"** ECF No. 29 at 6 (citing Ex. 5). Accordingly, the Motion to Compel is denied as moot in light of Defendant's supplemental response.

***Interrogatory No. 10:*** Questions Regarding Documents Produced Relating to Railcar to Passenger Railcars.

MNR reports that documents to which this interrogatory is directed were produced on June 20, 2025 with additional supplemental production of more documents on July 21, 2025. ECF No. 29 at 7. MNR supplemented its response to Interrogatory No. 10 on July 21, 2025, *after* the Motion to Compel was filed. Accordingly, the Motion to Compel is granted as to Interrogatory No. 10.

***Interrogatory Nos. 13 and 14:***

***Interrogatory No. 13***: Did Metro North or the MTA ever hire an ergonomic consultant to review ergonomic *risk factors* for employees in Metro North's claim[s] department? If so, did it obtain a report from the contractor and who has custody of it? (emphasis added).

*Objection:* Defendant objects to this interrogatory on the grounds that it seeks irrelevant information and is not calculated to likely lead to discovery of admissible evidence as the issues in this lawsuit do not arise from anything which involved employees in Metro-North's claims department.

Defendant claims that Plaintiff was contributorily negligent by failing to stretch as required by Metro North Safety Rule 2700 regarding ergonomics.[1] ECF No. 21 at 12 (citing Appx. C and G). Plaintiff raises two arguments. First, he argues that whether MNR "hired an ergonomic

---

[1] Interrogatory No. 5: If Defendant contends that plaintiff was contributorily negligent, explain in detail how he was contributorily negligent including everything you claim he did not do that he who should have done and everything he did do that he should not have done and when said actions or omissions should or should not have occurred.
Answer: Subject to and without waiving the foregoing objections, Plaintiff did not take steps to avoid strain on the musculoskeletal system, did not appropriately stretch, did not take steps to avoid an awkward posture.

ECF No. 21-3 (Appx. C at 4-5); *see* ECF No. 21-7 (Appx. G at 2-3); *see also* ECF No. 15 (First Affirmative Defense).

5

consultant to educate officer workers in its Claims Department is relevant to whether [MNR] acted reasonably by not providing any ergonomic consultant evaluation or training concerning the work or task the plaintiff was performing when he was injured." ECF No. 21 at 12. Second, he argues that "[t]he information is also relevant to defend against Metro North's contributory negligence claim that plaintiff was contributorily negligent by not stretching as required by a Metro North Safety Rule concerning ergonomics." *Id.* The Court agrees. Defendant will provide a supplementary response to whether it hired a consultant to review *risk factors* in MNR's Claims Department and whether it obtained a report from the contractor, and who possesses the study. Accordingly, the Motion to Compel a response to Interrogatory No. 13 is granted.

**Interrogatory No. 14**: Did Metro North hire *any* ergonomic consultants to review ergonomic risk factors involved with replacing lateral bumpers on [passenger] rail cars or for *any* type of repairs done on rail cars? If so, (a) identify the name and address of each such consultant, and date of hire (b) the date, location, title and custodian of any documents, records, reports or emails concerning any such ergonomic reviews or valuation, and (c) describe what type or repair work on rail cars was reviewed or evaluated?[2] (emphasis added).

*Objection:* Defendant objects to this interrogatory on the grounds that [it] is overbroad in time and scope, seeks irrelevant information, an[d] is not likely to lead to discovery of admissible evidence.

*Answer:* Subject to and without waiving the foregoing objections, no ergonomic consultant was hired to review ergonomic risk factors involved with replacing lateral bumpers on rail cars.

Plaintiff seeks to compel a responsive answer to whether MNR hired *any* consultant to review ergonomic risk factors for *any* type of repairs done on passenger rail cars. ECF No. 21 at 13. He argues that MNR "limits its answer to the *specific task*" that Plaintiff was performing, but "did not respond to whether *any* ergonomic assessment[s] were done on any other types of repair work done on passenger railcars." *Id.* (emphasis added). Plaintiff explains that, if for instance, "an ergonomic assessment was done concerning replacing wheels on passenger cars but not on

---

[2] During the parties' Rule 37 meet and confer conference, Plaintiff narrowed "rail cars" to passenger cars. ECF No. 21 at 13.

replacing lateral bumpers" this may show "it was feasible for [MNR] to have also directed an ergonomic assessment for lateral bumper replacements and failed to use reasonable care by not doing so." *Id.*

Defendant responds that "Plaintiff was a *carman* who was *replacing lateral bumpers* on a railcar in a *railyard* when he was allegedly injured." ECF No. 29 at 7. As to Interrogatory Nos. 13 and 14, that MNR states it "clearly responded that it did not retain an ergonomic consultant or conduct an ergonomic study for the task of replacing lateral bumpers." *Id.* Plaintiff contends that Defendant's response is too narrow. The Court agrees. Defendant will answer whether *any* ergonomic assessments were done on *any* passenger rail cars five years prior to the accident. Accordingly, the motion to compel a response to Interrogatory No. 14 is granted in part and denied in part.

### CONCLUSION

For the reasons stated, Plaintiff's Motion to Compel is granted in part, denied in part and denied as moot in part. ECF No. 20.

This is not a recommended ruling. This ruling and order is a "determination of [a] nondispositive motion[] . . . relating to discovery." D. Conn. L. Civ. R. 72(C)(2). As such, it is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2. It is an order of the Court unless reversed or modified by the District Judge in response to a timely objection under Local Rule 72.2(a).

*/s/ Maria E. Garcia, U.S.M.J.*
Hon. Maria E. Garcia
United States Magistrate Judge